We will move now to our last case of the day. This is appeal 22-1563. We're going to hear first from the appellant, Ms. Edinger. Good morning. Good afternoon. May it please the court, Jessica Edinger for Jose Mendoza-Cortez. This appeal narrowly focuses on a singular procedural error at sentencing. The district court had trouble in our view correctly applying the mitigating role reduction guideline, 3B1.2. Because role is what I'm here to talk about today, I'd like to start with the story of the role in this offense. So Mr. Mendoza-Cortez's role arises on objectively heartbreaking facts. His sister, who's in Mexico, gives birth to a baby three months early. The baby is struggling to survive, and the hospital is threatening to pull the plug on the incubator that the baby is living in because the medical bills are unpaid. So his sister and his newborn niece are in desperate need of cash. Quickly, Mr. Mendoza-Cortez learns of this, and he has no cash to send them. He and his brother agree under this terrible circumstance. They make a very bad decision to transport drugs one time for one payment of $1,000, trying to help their sister. They were mules, one-time couriers, pawns in a broader operation, and they got caught. Mr. Mendoza-Cortez shared what he knew with authorities, but he didn't know much because he's at the bottom rungs of this organization, of this hierarchy. The court turned the guideline on its head when it thought that Mr. Mendoza-Cortez couldn't be a minimal participant under 3B1.2a, and it relied on facts that contradict the record when it labeled him a minor participant. For those reasons, we asked this court to remand for resentencing. The legal errors and the factual errors are independent grounds for reversal here. I'd like to highlight one legal error in particular, although we've identified multiple in the briefs. The first is the district court very clearly states that it's selecting the two-level reduction because Mr. Mendoza-Cortez didn't plead to a conspiracy. That contradicts precedent in Hill, this court decided, and it also contradicts the guideline's text. Hill explains this very well, but I'd like to point out that the introduction to Chapter 3, Part B of the guidelines specifically says that role adjustments aren't based solely on the elements and the acts of conviction. Of course, when we move to Note 3a in the guidelines, that can apply, just so long as that even if the defendant is held accountable only for his own conduct. And then when we move to, of course, Note 3c, that determination of role is heavily dependent on the facts. None of that turns on what the defendant has pled guilty to. So there's a direct contradiction between the district court's clear reason for saying, I'm choosing between A and B, I don't think A is an option. This court has, of course, remanded in other situations where the court has made legal errors. If the court doesn't have questions about the other legal errors that we've identified, I'm happy to talk about the factual findings that the district court made. That's fine. So the district court makes two factual findings that are not supported by the record and would provide an independent reason to send this back for resentencing. First, the district court says Mr. Mendoza-Cortez exercised some discretion in planning and using their own car and agreeing to participate in the transport. That's separate appendix, page 5. Of course, this is problematic because the facts say Mr. Mendoza-Cortez didn't have discretion or decision-making authority. He's simply using Gregorio, his brother's car, driving to point A in St. Paul. Somebody else selects point A. That's not his planning. Somebody else then selects point B, a residential address in Columbus, Ohio. That's not his planning. He's simply following Google Maps. Can I ask you a question regarding the quantity of the drugs? Can you address that? The quantity of the drugs, it's 20 pounds of meth. It's a lot of drugs. It's a lot of drugs. It's a lot of drugs. It's usually not the first time, at least in my experience, it's not they take the first guy, the brand new guy, and say, on your first run, we're going to give you 20 pounds of meth. Maybe they did in this case. It seems to be the case that they did in this case, Your Honor, because Mr. Mendoza-Cortez has no criminal history whatsoever. When we look at the factual background that I've started with, I think it speaks to that. He only learns of this opportunity because of a colleague at his roofing job who what he knew was involved in the drug trade. His colleague, Romero, learns about the desperate plight that Mr. Mendoza-Cortez is in. He's shared that with Romero. Romero says, hey, I've got an opportunity for you. Right, but what I'm getting at, I got all that, but most of the time, drug dealers don't want their drugs taken by the police. That's like their objective is to get their drugs from point A to point B without this introduction, right? So they usually have some, they usually, I mean, I guess, how should I say this? I think Judge Connolly said, look, I just don't buy it. If this was a pound of drugs or something like that, maybe the argument would be more And I guess what's wrong with Judge Connolly's analysis there? The quantity of the drug can't drive the conduct. So I would say that the conduct is the same regardless of the quantity. The only evidence that we have is that Mr. Mendoza-Cortez did this one time. He tells the judge, he tells the authorities everything that he knows. The district court then makes a safety valve finding that says he's conveyed everything that he knows, and there's no dispute on that point. There's not also, at this point on the mitigating role guideline applies. We're merely talking about whether it's A or B. But to go more directly back to your point, Your Honor, you're focused on, okay, it's 20 pounds or one pound. It doesn't change the idea that they showed up, they were told where to go, they show up and they drive the amount of drugs from point A to point B on this, as far as we can tell, one occasion. To infer more from saying, based on information outside the record, I don't think that's normally how this works. I think that runs into conflict with the fact-bound determination that the guideline tells us to apply in this particular case. It's interesting, and for the sentencing issues, to me it's very interesting. If a defendant gets up and says, I'm sorry, and the judge says, I just don't believe you. I just don't believe you're sorry, and I'm going to give you a guideline sentence. Here it's a little different. He gets up and says, this is my first time, and it seems to me the judge says, I just don't believe you. I just don't believe you. Based on the facts, and based on the facts as they were developed, and even taking every fact that you said is the absolute truth except for this is my first time, I just don't believe that the first time a supplier is going to give you 20 pounds of meth to deliver. To me, I get hung up on, like the last case we heard, it seemed maybe if I was the district judge, I would have decided it differently. Maybe not, but I'm not the district judge. Let me focus then on the legal question here, and less about the facts. When we're choosing and reading, how do we apply Part A of 3B1.2? How do we apply Part B? One of the things the district court says that I think goes to this credibility issue is, well, you couldn't tell me more. You couldn't tell me more about the participants. You couldn't tell me more about the activities, and that really flips Note 4 on its head. This idea that somebody who's at the bottom rungs of the conspiracy, of the organization, would suddenly have to testify, when you can't provide more information about the scope or the activities of other people involved in what is clearly a multi-person operation, that's indicative of being a minimal participant. So it's not just the credibility determination about was this your first time or not. He cannot provide any more information. The safety valve finding shows us that he cannot provide any more information. Can you address the phone calls that he had with Ramiro? Sure. So there's a couple recorded phone calls in the record that are also discussed in the PSR. He's making phone calls to his wife, Gloria. He's crying and sobbing during the phone calls, and he's very distraught. And at one or two of the phone calls, Ramiro has come to Gloria's house and is available on the phone. And so he does talk to Ramiro. There's no question that Ramiro is a work of fiction. He exists. And Ramiro, on those phone calls, talks about higher-ups in Minnesota. It's a very important point that the district court overlooks, and the second point of factual error in its discussion, because the district court says, well, there's only really four people that are known to be involved in this offense. There's Gregorio and Jose, my client. There's the gentleman that loads the meth into their car in St. Paul, Minnesota. And then there's Ramiro. Did his co-defendant also get calls or speak to Ramiro? Not to my knowledge, no, Your Honor. But when we talk about the importance of those phone calls, Ramiro is the one saying there are higher-ups in Minnesota who are calling the shots here. And so when we put that into the context of who's involved in this operation, there's not four participants. We count to at least seven. We start with the Minnesota higher-ups as the most culpable. We then move down to Ramiro. There's the source of supply handlers. Then we've got the individual who's receiving the drugs in Ohio at a residential address. Then we've got the person who loaded the Gregorio and Jose's car with the meth in St. Paul. And then we have Jose and Gregorio. And there's nobody below them. So the idea that there's just four, and to go back to Judge Lee's point about the phone call, that to me is the most important part. I know I'm over my time, so I'll pause. If I can stand back up afterwards, I'd appreciate it. Thank you, Ms. Attinger. Yes, we'll give you a couple minutes for rebuttal. Thank you. Mr. Eldersma. Good afternoon, Your Honors, and may it please the Court. My name is Chad Eldersma. I'm an assistant U.S. attorney in the Western District of Wisconsin, and I represent the United States in this matter. Contrary to the appellant's position, the District Court did not err. It did not err when it generously decided that the defendant's role in this concerted criminal activity warranted a two-level minor role reduction under Section 3B1.2 sub B of guidelines. The District Court didn't err because it adhered to the guidelines and it followed the instructions of this Court. It compared the defendant's role in the concerted criminal activity, which, as Your Honor pointed out, was transporting 20 pounds of methamphetamine across multiple state lines. It compared the defendant's role to that of the known average participants. And the District Court was right. There are only four. There was the defendant, the co-defendant and half-brother, Mr. Ariel Mendoza, who the defendant recruited to drive because he had a license and a car. There was the individual who was in Minnesota who transported and gave the defendant the methamphetamine. We know that person exists because they were captured on surveillance video. And then there is Ramiro. Ramiro and the defendant, they communicated. They communicated leading up to the day of the trip, during the trip, but most importantly, as Judge Lee pointed out, they communicated on the phone and after. In fact, Ramiro, through his wife Gloria, through the defendant's wife Gloria, had calls with the defendant in jail. Gloria asked Ramiro for money. She expected some money. Similarly, Ramiro asked the defendant if he had told law enforcement about Ramiro's identity. He wanted to know if the defendant had snitched. And the defendant assured Ramiro, no, your identity is still safe with me. At least it was at that time. Under U.S. v. Sanchez, that's an important factor to consider. Even when determining whether to apply a two or a four level mitigating role reduction, the test still remains the same. It is, it really is. And here, that's what Judge Conley did. He ultimately determined that by a preponderance of the evidence, the defendant was less culpable than most, and he awarded the defendant a two level minor role reduction. The government may not necessarily agree with that, but it would ask that the defendant's sentence be affirmed, if there are no other, or if there are no questions. Thank you very much, Mr. Elgin. Thank you. We'll go back to rebuttal. Ms. Errington, Ms. Ettinger, about two minutes, please. Thank you, Your Honor. Briefly, I'd just like to touch on a few points that my colleague on the other side made. First, when we talk about credibility, to go back to Judge Kirsch's question, if the district court thought that Mr. Mendoza-Cortez was lying, the safety valve wouldn't have been available. When we talk about credibility, I think that's an important piece to consider, because the judge certainly believed, and the government believed, that the safety valve was required. I thought the safety valve applied if the defendant says everything that he knows, like just debriefs to the government. But I didn't think there was a credibility requirement. I remember several of my defendants got the safety valve where I didn't quite believe everything they said, but I didn't think that was a criteria. Maybe I'm wrong on that. I think maybe it's more implicit. The suggestion that somebody is withholding information would be that they wouldn't be safety valve eligible. So if somebody is truthfully professing everything that they know, there is some implicit understanding that you've earned the safety valve because  My colleague on the other side also talks about Mr. Mendoza-Cortez recruiting his brother, and I think that's a bit of an overstatement. Gregorio Arreola Mendoza has a car. Jose Mendoza-Cortez does not. They both have a sister in Mexico and a baby niece who are dying and in desperate condition. It is natural for one brother to turn to another. I think recruiting just overstates the situation in a way I wanted to draw attention to. And lastly, I think there's also a bit of an overstatement in describing the relationship between Mr. Mendoza-Cortez and Romero, which also goes back to Judge Lee's questions about the phone calls and the content of them. My colleague talks about asking for money, that there's more extensive relationship. The relationship between Romero and Mr. Mendoza-Cortez begins at work at a roofing company that Mr. Mendoza-Cortez works at for a number of years. This concept of coming up as a one-time courier is a one-time event, as I said before, based on extenuating circumstances, and the phone calls that happen between Romero via Gloria and Mr. Mendoza-Cortez afterwards are simply Romero being out for Romero. Did you snitch on me? I'll promise to pay your bail, which never comes through. I'll take care of your family, which never happens. This is about Romero covering for himself. Thank you very much, Ms. Ettinger. Thank you, Your Honor. Thank you very much, Mr. Albersma. The case will be taken under advisement. That is our last case for the day, so we'll close the record. Thank you.